**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------

| | |
|---|---|
| RYAN O'DELL | : Civil Action No. 1:22-cv-01892 |
| : | |
| Plaintiff, | : **COMPLAINT FOR VIOLATIONS** |
| | : **OF SECTIONS 14(a) and 20(a) OF** |
| v. | : **THE SECURITIES EXCHANGE** |
| | : **ACT OF 1934** |
| CITRIX SYSTEMS, INC., ROBERT M. | : |
| CALDERONI, NANCI E. CALDWELL, | : **JURY TRIAL DEMANDED** |
| ROBERT D. DALEO, MURRAY J. DEMO, | : |
| THOMAS E. HOGAN, MOIRA A. | : |
| KILCOYNE, ROBERT E. KNOWLING, JR., | : |
| PETER J. SACRIPANTI, and J. DONALD | : |
| SHERMAN, | : |
| | : |
| Defendants. | : |

---------------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Citrix Holdings Corp. ("Citrix" or the "Company") and the members Citrix's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Citrix by affiliates of Vista Equity Partners ("Vista") and Elliott Investment Management L.P. ("Elliott" and with Vista, the "Buyout Group").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 4, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Picard Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Picard Parent, Inc. ("Parent"), will merge with and into Citrix with Citrix surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Parent and Merger Sub were formed by TIBCO Software, Inc., an indirect subsidiary of an affiliate of Vista. Vista is partnering with Evergreen Coast Capital Corporation, an affiliate of Elliott, to acquire the Company. Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on January 31, 2022 (the "Merger Agreement"), each Citrix stockholder will receive $104.00 in cash (the "Merger Consideration") for each Citrix share owned.

1. As discussed below, Defendants have asked Citrix's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Qatalyst Partners LP ("Qatalyst") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Citrix's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

7.      Plaintiff is, and has been at all relevant times, the owner of Citrix stocks and has held such stocks since prior to the wrongs complained of herein.

8.      Individual Defendant Robert M. Calderoni ("Calderoni") has served as a member of the Board since June 2014 and Chairman of the Board since July 2015.  Calderoni is the Company's Interim President and Chief Executive Officer.

9.      Individual Defendant Nanci E. Caldwell has served as a member of the Board since July 2008.

10.     Individual Defendant Murray J. Demo has served as a member of the Board since February 2005.

11. Individual Defendant Thomas E. Hogan has served as a member of the Board since December 2018.

12. Individual Defendant Moira A. Kilcoyne has served as a member of the Board since June 2018.

13. Individual Defendant Robert E. Knowling, Jr. has served as a member of the Board since October 2020.

14. Individual Defendant Peter J. Sacripanti has served as a member of the Board since December 2015.

15. Individual Defendant J. Donald Sherman has served as a member of the Board since March 2020.

16. Defendant Citrix a Delaware corporation and maintains its principal offices at 851 West Cypress Creek Road, Fort Lauderdale, FL 33309. The Company's stock trades on the NASDAQ Global Select under the symbol "CTXS."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

<strong><u>SUBSTANTIVE ALLEGATIONS</u></strong>

**A.**   **<u>The Proposed Transaction</u>**

19. Citrix, an enterprise software company, provides workspace, app delivery and security, and professional services worldwide. The Company offers workspace services, including Citrix Workspace; Citrix Virtual Apps and Desktops; Collaborative Work Management; Citrix Content Collaboration, a cloud-based file sharing, digital transaction, and storage solution, which provides enterprise-class data services on various corporate and personal mobile devices; Citrix

Analytics for Security that assesses the behavior of Citrix Virtual Apps and Desktops, and Citrix Workspace users and applies actions to protect sensitive corporate information; Citrix Analytics for Performance, which uses machine learning to quantify user experience; Citrix Secure Workspace Access that provides an end-to-end solution to implement Zero Trust principles; and Citrix Secure Internet Access, which provides a solution that protects direct internet access for branch and remote workers using unsanctioned apps.  It also provides Citrix ADC that offers application delivery controller, on-premise, in-cloud, and SaaS deployment option solutions.  In addition, the Company provides customer services, hardware maintenance, consulting, and product training and certification services.  The Company serves healthcare, financial services, technology, manufacturing, consumer, and government agencies. It markets and licenses its products through resellers, distributors, systems integrators, independent software vendors, original equipment manufacturers, and service providers.  The Company was formerly known as Citrus Systems, Inc. and changed its name to Citrix Systems, Inc. in March 2009.  Citrix was incorporated in 1989 and is headquartered in Fort Lauderdale, Florida.

20. On January 31, 2022, the Company announced the Proposed Transaction:

> FORT LAUDERDALE, Fla.--(BUSINESS WIRE)-- Citrix Systems, Inc. (NASDAQ: CTXS) ("Citrix"), today announced that it has entered into a definitive agreement under which affiliates of Vista Equity Partners ("Vista"), a leading global investment firm focused exclusively on enterprise software, data and technology-enabled businesses, and Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), will acquire Citrix in an all-cash transaction valued at $16.5 billion, including the assumption of Citrix debt.
>
> Under the terms of the agreement, Citrix shareholders will receive $104.00 in cash per share. The per share purchase price represents a premium of 30 percent over the Company's unaffected 5-day VWAP as of December 7, 2021, the last trading day before market speculation regarding a potential transaction, and a premium of 24 percent over the closing price on December 20, 2021, the last

trading day prior to media reports regarding a potential bid from Vista and Evergreen.

In connection with the transaction, Vista and Evergreen intend to combine Citrix and TIBCO Software ("TIBCO"), one of Vista's portfolio companies. TIBCO is a global leader in enterprise data management, empowering its customers to connect, unify, and confidently predict business outcomes. The combination brings together Citrix's secure digital workspace and application delivery suite with TIBCO's real-time intelligent data and analytics capabilities to empower customers and users with the secure application and information access and insights they need to accelerate digital transformation and navigate the hybrid workplace. The union will create one of the world's largest software providers, serving 400,000 customers, including 98 percent of the Fortune 500, with 100 million users in 100 countries. Further, it will accelerate Citrix's defined growth strategy and SaaS transition. The combined company will be positioned to provide complete, secure and optimized infrastructure for enterprise application and desktop delivery and data management to advance hybrid cloud IT strategies and meet the needs of the modern enterprise.

"Over the past three decades, Citrix has established itself as the clear leader in secure hybrid work. Our market-leading platform provides secure and reliable access to all of the applications and information employees need to get work done, wherever it needs to get done. By combining with TIBCO, we will expand this platform and the outcomes our customers achieve," said Bob Calderoni, Chair of the Citrix Board of Directors and Interim Chief Executive Officer and President. "Together with TIBCO, we will be able to operate with greater scale and provide a larger customer base with a broader range of solutions to accelerate their digital transformations and enable them to deliver the future of hybrid work. As a private company, we will have increased financial and strategic flexibility to invest in high-growth opportunities, such as DaaS, and accelerate its ongoing cloud transition."

"Today's announcement is the culmination of a strategic review process conducted over five months, including extensive outreach to both potential financial and strategic buyers," continued Calderoni. "This transaction provides our shareholders with significant immediate cash value. Moreover, this investment by Vista and Evergreen is a testament to the value Citrix has created and the reputation our team has built."

Added Dan Streetman, CEO of TIBCO, "There has never been a better time to be in the business of connected intelligent analytics, and we're thrilled to bring our industry-leading solutions to Citrix's global customers. The workplace has changed forever, and companies everywhere will require real-time access to faster, smarter insights from the increasingly large volumes of data available to them, their employees, and their ecosystems. I couldn't be more excited about our combined vision and look forward to a strong partnership."

"We have always viewed Citrix as a true technology pioneer, building and defining so many categories that have changed the landscape of the industry," said Monti Saroya, Co-Head of Vista's Flagship Fund and Senior Managing Director. "As a private company, Citrix will have access to additional resources and support, as well as more flexibility to take advantage of strong secular tailwinds with trends supporting modern and secure remote hybrid work to serve the combined customer base and invest in high growth markets."

"Citrix and TIBCO provide mission-critical software and services to many the world's most successful businesses, and we see tremendous value in combining their respective world-class offerings to help companies gather insight from the growing volumes of data generated by the hybrid work economy. Both businesses have now completed transitions to approximately 90% recurring revenue, poising the go-forward combined business to drive future growth," said John Stalder, Managing Director at Vista. "We look forward to partnering with Evergreen and the Citrix and TIBCO teams to ensure this is a seamless transition for all stakeholders."

"We have long appreciated the mission-critical role that Citrix plays in keeping workforces connected," said Managing Partner Jesse Cohn and Senior Portfolio Manager Jason Genrich on behalf of Evergreen and Elliott. "Having first invested in Citrix more than six years ago, we have a deep understanding of its unique strengths and significant potential as a private company. We look forward to partnering with Vista and working closely with Citrix's management team and its talented employees to expand its capabilities and help drive its next phase of growth."

**Terms of the Transaction**
The transaction, which has been unanimously approved by the members of the Citrix Board of Directors voting on the matter, is expected to close mid-year, subject to customary closing conditions,

including approval by Citrix shareholders and receipt of regulatory approvals. The transaction is not subject to a financing condition. Upon completion of the transaction, Citrix's shares will no longer trade on the Nasdaq, and Citrix will become a private company. Citrix will continue to operate under the Citrix name and brand, and will remain headquartered in Fort Lauderdale, FL.

Elliott and certain of its affiliates, which hold an approximately 12% interest in Citrix through a combination of outstanding shares of Citrix common stock and derivatives, have entered into a voting agreement with Citrix, pursuant to which they have agreed, among other things, to vote their shares of Citrix common stock in favor of the transaction.

\* \* \*

**Advisors**
Qatalyst Partners is serving as financial advisor to Citrix, and Goodwin Procter LLP is acting as legal counsel.

BofA Securities, Barclays, Citi, Credit Suisse, Goldman Sachs & Co. LLC, Lazard and Mizuho Securities USA LLC, are serving as financial advisors to Vista and Evergreen. Kirkland & Ellis LLP is acting as legal counsel for Vista and TIBCO, and Gibson, Dunn & Crutcher LLP and Debevoise & Plimpton LLP are acting as legal counsel for Evergreen.

\* \* \*

21. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Citrix's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.    **The Materially Incomplete and Misleading Proxy Statement**

22. On March 4, 2022, Citrix filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any

8

material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. The Proxy Statement fails to provide material information concerning financial projections by Citrix management and relied upon by Qatalyst in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts in September 2021 and December 2021 (the "Company Projections") and provided them to the Board and Qatalyst with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Citrix management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Non-GAAP Gross Profit, Non-GAAP Operating Income, Non-GAAP Net Income, and EBITDA, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

28. With respect to Qatalyst's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value of Citrix; (ii) line items used to calculate the Company's projected unlevered free cash flows for fiscal years 2021 through 2025; (iii) the inputs and assumptions underlying the use of a range of multiples of fully diluted enterprise value to next-twelve-months estimated unlevered free cash flow of 12.0x to 17.0x; (iv) the number of fully-diluted shares of Citrix Common Stock as of January 26, 2022; (v) the inputs and assumptions underlying the use of the range of discount rates of 8.0% to 9.5%; and (vi) the estimated weighted average cost of capital for the Company.

29. With respect to Qatalyst's *Selected Companies Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the companies observed by Qatalyst in the analysis, including the implied fully diluted enterprise value, EBITDA, and the estimated consensus levered free cash flow for each company selected and observed by Qatayst in the analysis.

30. With respect to Qatalyst's *Selected Transactions Analysis*, the Proxy Statement fails to disclose the individual financial metrics for the transactions observed by Qatalyst in the analysis, including the implied fully diluted enterprise value, Next-Twelve-Month EBITDA, and Next-Twelve-Month Revenue for each target company selected and observed by Qatayst in the analysis.

31. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

34. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

35. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

36. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

37. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of Citrix within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Citrix, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of Citrix, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

40.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Citrix, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

42.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

43.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

44.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

45.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 4, 2022             **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: *s/Benjamin Y. Kaufman*
Benjamin Y. Kaufman
270 Madison Avenue, 9th Floor
New York, NY 10016
(212) 545-4600
kaufman@whafh.com

*Attorneys for Plaintiff*

812450